```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
UNITED STATES OF AMERICA,                :
                                         :
                    Plaintiff,           :
                                         :          MEMORANDUM & ORDER
             -against-                   :             10-CR-22 (DLI)
                                         :
CASSIO VERTIL,                           :
                                         :
                    Defendant.           :
-----------------------------------------------------------------x
```
**DORA L. IRIZARRY, United States District Judge:**

On November 12, 2010, defendant Cassio Vertil ("Defendant") was convicted after trial by a jury of conspiracy to import cocaine, and aiding and abetting the importation of cocaine, into the United States. He was found not guilty of conspiracy to distribute cocaine and attempted possession of cocaine with intent to distribute. On May 9, 2011, Defendant timely moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 ("Rule 29"). Defendant challenges the jury's verdict with respect to the above-referenced charges. For the reasons set forth below, Defendant's Rule 29 motion is denied in its entirety.

## BACKGROUND

On January 11, 2010, a grand jury returned an indictment charging Defendant and the courier, Gregory Nerette ("Nerette"), with aiding and abetting the importation of cocaine and conspiracy to import cocaine, in violation of 21 U.S.C. §§ 952(a) and 960 and 18 U.S.C. § 2, and conspiracy to distribute cocaine and possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a) and 846. (*See* Defendant's Memorandum ("Def. Mem.") at 2; Trial Transcript ("Tr.") at 508-11.) Nerette pled guilty and cooperated with the government, ultimately testifying as a witness for the government at trial. (*Id.*; Government's Memorandum ("Gov't Mem.") at 4; Tr. at 43-47.)

1

At trial, Nerette testified that two individuals, "Bruce" and "Pataan," recruited him in Haiti to courier cocaine into the United States, and that he previously had couriered cocaine for them in September or October of 2009. (Tr. at 52-54.) Pataan instructed Nerette to transport the cocaine to New York and call "Junior," who Nerette understood to be Defendant, upon his arrival in New York. (Tr. at 69-74, 76-77.) Bruce supplied Nerette with a phone number for Defendant. (Tr. at 70, 76-77, 143.) Nerette was to call Defendant and meet him to hand him the drugs, in return for which Defendant would pay Nerette $5,000 in exchange for the cocaine. (Tr. at 73.) Nerette testified that he had not met Defendant prior to December 13, 2009. (Tr. at 70.) While working with Pataan in Haiti, Nerette saw Defendant, who was pointed out to Nerette by Pataan. (*Id.*) Nerette first met Defendant after he arrived in New York on December 13, 2009. (*Id.*)

On December 13, 2009, Nerette arrived at John F. Kennedy International Airport ("JFK") from Port-au-Prince, Haiti aboard American Airlines Flight 896. (Tr. at 30.) Nerette was examined by officers from United States Customs and Border Protection ("CBP"), who discovered approximately 984 grams of cocaine attached to a brace on Nerette's right leg. (Tr. at 31-34.) After his arrest, Nerette agreed to cooperate with the government and helped arrange a controlled delivery to Defendant, who was the individual he was told to contact upon his arrival in New York. (Tr. at 252.) Immigration and Customs Enforcement ("ICE") agents transported Nerette to the Doubletree Hotel in Queens, NY, where he left a voicemail at 2:30 a.m. on December 14, at the telephone number that Bruce instructed him to call when he arrived at JFK. (Tr. at 259-64.) Nerette's voicemail stated that he planned to throw away "the stuff" since Defendant was not returning his call. (*See* Tr. at 103-04.)

Defendant had rented a room on December 13, 2009 at the Best Western Hotel in Queens, New York under the name of his brother, Kenel Vertil. (Tr. at 183.) He returned Nerette's phone call at 6:38 a.m that morning, and they had a three-way telephone conversation with Bruce. (Tr. at 105-06.) During the call, Bruce explained that Defendant had been very nervous because Nerette had called three hours late. (*See* Tr. at 106-07.) Bruce believed that something "fishy" was going on because of Nerette's late call, but sent Defendant to see Nerette since Nerette had claimed that everything was fine. (Tr. at 106.) When Defendant arrived at Nerette's room at the Doubletree, Nerette asked Defendant whether he had the money with him. (Tr. at 107-10.) Defendant told Nerette that he had left the money at the Best Western, and asked Nerette to travel back there with him. (Tr. at 111.) As Defendant exited Nerette's room, he was apprehended by ICE agents and claimed that he had been set up. (Tr. at 111-12, 292-93.)

The ICE agents obtained a warrant to search Defendant's room at the Best Western, and the search yielded a cell phone, $4,500 in cash, a credit card with Defendant's name, and a slip of paper with the phone number and room number to the Doubletree Hotel, where Nerette was located. (Tr. at 202-04, 207-09.) Surveillance footage showed Defendant entering, and checking into, the hotel. (*See* Gov't Ex. 22, 22-A; Tr. at 190-191, 196.) The agents also recovered a second phone on Defendant's person. (Tr. at 275.) A search of the phones revealed calls to both Nerette and Haiti on the morning of December 14, 2009. (Tr. at 277-83.) The search also revealed a text message and telephone call to American Airlines that occurred after Nerette's flight had landed at JFK on December 13, 2009. (Tr. at 280-81.) In a post-*Miranda* statement, Defendant falsely denied ever checking into the room at the Best Western. (Tr. 291-93.)

## **LEGAL STANDARD**

Rule 29 "imposes a heavy burden on Defendant, whose conviction must be affirmed 'if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt[.]'" *United States v. Cote*, 544 F.3d 88, 98 (2d Cir. 2008) (citation omitted). A court's conclusion that "no rational trier of fact could have found Defendant guilty beyond a reasonable doubt" must be based on its consideration of "all of the evidence, direct and circumstantial[.]" *United States v. Eppolito*, 543 F.3d 25, 45 (2d Cir. 2008) (citation omitted).

On a post-verdict motion for a judgment of acquittal, a trial court may not "substitute its own determination of the weight of the evidence and the reasonable inferences to be drawn for that of the jury." *Cote*, 544 F.3d at 99 (internal quotation and typographical marks omitted). Instead, "[t]he court must give full play to the right of the jury to determine credibility, and must draw all possible inferences in favor of the government." *Id.* In other words, the court must "[v]iew[ ] the evidence in the light most favorable to the government," which means "crediting every inference that the jury may have drawn in favor of the government, and recognizing that the government's evidence need not exclude every other possible hypothesis." *Eppolito*, 543 F.3d at 45 (internal quotation marks and citations omitted). However, "specious inferences are not indulged, because it would not satisfy the Constitution to have a jury determine that Defendant is *probably* guilty." *United States v. Lorenzo*, 534 F.3d 153, 159 (2d Cir. 2008) (internal quotation marks and citations omitted). Deference to a jury's verdict "is especially important when reviewing a conviction for conspiracy because a conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel." *Eppolito*, 543 F.3d at 46 (internal quotation marks and citation omitted).

**DISCUSSION**

In his Rule 29 motion, Defendant asserts that the evidence submitted at trial was insufficient to convict him of conspiracy to import cocaine, or aiding and abetting the importation of cocaine, into the United States. Specifically, Defendant argues that the government did not prove Defendant knowingly participated in a conspiracy to import cocaine because the evidence presented at trial merely proved that Defendant engaged in some kind of unlawful activity, not the specific activity alleged. (Def. Mem. at 7-10.) The court disagrees.

To satisfy its burden of proof as to the importation, the government had to prove beyond a reasonable doubt that Defendant (1) knowingly and intentionally, and (2) together with others, imported a controlled substance into the United States. *See* 21 U.S.C. §§ 952(a), 960; 18 U.S.C. § 2. In addition, to satisfy its burden with regard to the conspiracy, the government had to prove beyond a reasonable doubt that (1) two or more persons entered into an agreement to import a controlled substance into the United States from another country, (2) Defendant knowingly and intentionally became a member of the conspiracy, and (3) Defendant had the specific intent to violate the substantive statutes, not just that Defendant knew *some* crime would be committed. *See Lorenzo*, 534 F.3d at 159 ("To sustain a conspiracy conviction, the government must present some evidence from which it can reasonably be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment[,] knowingly joined and participated in it," and "agree[d] on the essential nature of the plan.") (citations and quotation marks omitted). The government need not have proven that Defendant knew the exact type of controlled substance he possessed.

Here, the government presented sufficient evidence at trial to support the jury's finding of guilt beyond a reasonable doubt, including testimony and documents showing that: (1) the

cocaine supplier gave Nerette Defendant's cellular telephone number and instructed him to call Defendant when he arrived at JFK, (*see* Tr. at 69-74, 76-77); and (2) Defendant (a) made and received phone calls with Nerette and his suppliers on his cellular phone, (*see* Tr. 105-07, 259-64, 277-83), (b) acted nervous when Nerette called him hours later than he expected on the evening Nerette arrived in the United States, (*see* Tr. at 106-07), (c) arrived at Nerette's hotel room in order to collect the cocaine from Nerette and pay Nerette his fee, as per Defendant's arrangement with Nerette and their suppliers, (*see* Tr. at 105-12), and (d) falsely denied ever checking into the room at the Best Western Hotel, (*see* Tr. at 291-93). The jury reasonably relied on this circumstantial evidence to infer Defendant's knowing participation in the conspiracy to import cocaine. *See Lorenzo*, 534 F.3d at 159 ("Direct evidence is not required; [i]n fact, the government is entitled to prove its case solely through circumstantial evidence, provided, of course, that the government still demonstrates each element of the charged offense beyond a reasonable doubt") (citations and quotation marks omitted); *United States v. Glenn*, 312 F.3d 58, 64, 70 (2d Cir. 2002) ("the prosecution may prove its case entirely by circumstantial evidence so long as guilt is established beyond a reasonable doubt").

In support of his Rule 29 motion, Defendant relies heavily on *Lorenzo*, 534 F.3d 153, in which the Second Circuit reversed the judgments of conviction as to defendants Julio Lorenzo and Andrea Lorenzo. In *Lorenzo*, the courier, who later cooperated with the government, made two separate trips to the United States. 534 F.3d at 156-58. On the first trip, defendant Julio Lorenzo actively assisted the courier and provided her with payment, but there was no evidence as to the courier's or Julio Lorenzo's knowledge about what was being exchanged. *Id.* at 160. While there was no question that the transaction on the second trip involved cocaine, defendant Julio Lorenzo was asleep through all of the events at issue, thus, there was no evidence that the

defendant participated in, or had knowledge of, the transaction. *Id.* at 160-61. In addition, co-defendant Andrea Lorenzo merely greeted the courier and helped transfer the courier and suitcase containing the drugs to Andrea Lorenzo's home. *Id.* at 161-62. The court held that the evidence only supported an inference that Andrea Lorenzo knew she was assisting in suspicious behavior, and her actions were also consistent with being hospitable to her nephew's girlfriend. *Id.* Furthermore, the above-referenced defendants were only two of a series of people who met with the courier to facilitate the importation of drugs. *See id.* at 156-58.

The facts in the instant case are distinguishable from those in *Lorenzo*, because the evidence here shows that Defendant knowingly and actively facilitated the importation of cocaine. *See United States v. Akefe*, 2010 WL 2899805, at *12-13 (S.D.N.Y. Jul. 21, 2010) (distinguishing *Lorenzo*). Nerette's testimony made clear that he knew the illegal conduct they were engaging in was the importation of drugs. (*See* Tr. at 63-65, 71-72 (Nerette understood that the merchandise he was going to take to the United States for Bruce was drugs); Tr. at 69-71, 76-77 (Nerette was instructed to call Defendant upon arrival at JFK to arrange for Defendant to pick up the drugs and to pay Nerette for his role).) Furthermore, unlike the defendants in *Lorenzo*, who were only two people in a chain of many others involved in picking up and transferring the courier and drugs, Defendant here was the only person Nerette was instructed to contact upon arrival in the United States and the only person he did contact upon arrival. Furthermore, Nerette was specifically given Defendant's contact information and Defendant, who also possessed Nerette's contact and location information, came to meet Nerette to exchange the money for the drugs after Defendant spoke to Nerette on Nerette's cellular phone to arrange for the exchange. (*See* Tr. at 69-71, 76-77, 98-99, 107.)

That Nerette had not dealt specifically with Defendant during a prior drug distribution trip to the United States, Defendant did not actually possess the drugs in question, and no members of the conspiracy specifically mentioned the words "drugs" or "cocaine" in the course of their discussions, does not negate the jury's finding that Defendant was part of the conspiracy. Furthermore, although Defendant points to competing inferences that might have been drawn from the evidence established at trial, "it is the task of the jury, not the court, to choose among competing inferences that can be drawn in favor of the government." *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003).

In sum, taking all of the facts and circumstances together, the court finds that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Thus, after looking at the evidence in its totality in the light most favorable to the government, the court denies Defendant's motion. *See Lorenzo*, 534 F.3d at 159.

## **CONCLUSION**

For the reasons set forth above, Defendant's Rule 29 motion is denied and the conviction is affirmed.

SO ORDERED.

Dated: Brooklyn, New York
February 1, 2012

/s/
DORA L. IRIZARRY
United States District Judge